**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **TINA M. GREGORY and EDDIE JAMES WELLS, SR.,** individually and as Class Representatives for all others similarly situated, | ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) **CIVIL ACTION NO. 5:11-CV-422(MTT)** |
| **PREFERRED FINANCIAL SOLUTIONS,** *et al.,* | ) ) ) |
| **Defendants.** | ) ) ) |

## ORDER

This matter is before the Court on Defendants Larry D. Wilson, Steve Mlynski, Daniel Yuska, and Rod Miller's (the "Moving Defendants'") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. 78) and Defendants Jeffery Brooks, Credit Card Relief, Thomas P. Dakich, LaQuetta Pearson, Preferred Financial Solutions, and Jeff Whitehead's (the "Preferred Defendants'") motion for more definite statement (Doc. 79). For the following reasons, the Moving Defendants' motion is **DENIED** and the Preferred Defendants' motion is **GRANTED**.

### I.  FACTUAL BACKGROUND

Plaintiffs Tina Gregory and Eddie Wells, Sr. seek to recover damages on behalf of a class of Georgia consumers who contracted with Defendant Preferred Financial Solutions, Inc. ("Preferred") d/b/a Credit Card Relief ("CCR") for debt adjustment services.  (Doc. 77 at ¶ 1).  The Plaintiffs allege that the Defendants have violated the

Georgia Debt Adjustment Act, O.C.G.A. § 18-5-1, *et seq.*, committed fraud, breached their fiduciary duties, and made negligent misrepresentations.

### A.    The Preferred Defendants

Preferred is an Indiana corporation engaged in debt adjustment services.  (Doc. 77 at ¶ 38).  Preferred was formed by Ken Sckertch, Dan Bradley,[1] and Defendants Jeffery Brooks, Larry D. Wilson, Steve Mlynski, and Daniel Yuska.  CCR is not a separately owned and operated entity but rather a marketing name "to communicate with potential clients for financial solutions."  (Doc. 85-2 at 23:15-21).  Brooks is the President and a shareholder of Preferred.  Defendants Rhonda Roell-Taylor and Laquetta Pearson are attorneys licensed to practice law in Georgia who performed services for Georgia residents on behalf of Preferred.  (Doc. 77 at ¶¶ 24, 27).  Defendant Thomas P. Dakish d/b/a Dakish & Associates is an attorney licensed to practice in Indiana and served as Preferred's "national mediation counsel."  (Doc. 77 at ¶¶ 50-51).  Defendant Jeff Whitehead is an attorney licensed to practice in Illinois and served as Preferred's "national mediation counsel" after Dakish left the position.  (Doc. 77 at ¶ 30).  Preferred, CCR, Brooks, Taylor, Pearson, Whitehead, and Dakish (the "Preferred Defendants") are not challenging the jurisdiction of this Court.

### B.    The Moving Defendants

Wilson is a resident of Indiana and Preferred's Chief Operations Officer.  (Doc. 78-1 at ¶¶ 2-3).  Wilson is also a shareholder of Preferred.  (Doc. 78-1 at ¶ 3).  Preferred's management team, including Wilson, initiated the Credit Card Relief

---

[1] Sckertch and Bradley are no longer employees of Preferred and are not defendants in this case.

program.  (Doc. 85-1 at 28:19-25, 29:1-3).  Wilson also reviewed the legal compliance of Preferred's advertisements for its services.  (Doc. 85-2 at 52:21-25, 53:1-6).

Mlynski is a resident of Illinois and Preferred's Chief Marketing Officer.  (Doc. 78-2 at ¶¶ 2-3).  Mlynski is also a shareholder of Preferred.  (Doc. 78-2 at ¶ 3).  Mlynski was part of the team that initiated the idea for Preferred to go into the debt settlement business.  (Doc. 85-2 at 34:21-25, 35:1-6).  Mlynski is in charge of marketing and is responsible for the content and placement of television and radio advertising.  (Doc. 85-2 at 52:6-20, 57:1-19).  Further, Mlynski worked at Preferred's sales office which dealt directly with clients enrolled in Preferred's debt adjustment program.  (Doc. 85-5 at 18:7-24).

Yuska is a resident of Indiana and Preferred's Chief Financial Officer and Chief Technology Officer.  (Docs. 78-3 at ¶¶ 2-3; 85-2 at 6:5-6).  Yuska is also a shareholder of Preferred.  (Doc. 78-3 at ¶ 3).  Yuska coordinates "all of the outside high-level network administration people" and manages the IT support staff and all other vendors supporting Preferred's infrastructure.  (Doc. 85-2 at 14:13-19, 15:4-8).  He is also responsible for the computer systems and technology than supports the debt settlement program.  (Doc. 85-2 at 15:18-21, 16:2-11).  As Preferred's CFO, Yuska monitors the company's expenses.  (Doc. 85-2 at 18:12-14).

Defendant Rod Miller is a resident of Indiana and Preferred's Sales Manager.  (Doc. 78-4 at ¶¶ 2-3).  Miller is also a shareholder of Preferred.  (Doc. 78-3 at ¶ 3).  In 2009, Miller helped develop CCR's client care department to answer general questions for CCR's clients.  (Doc. 85-5 at 5:15-24).  Miller worked on CCR's website and

managed the content of the website from 2008 to 2010.  (Doc. 85-5 at 16:23-25, 17:1-3, 38:12-18).

### C.    The Plaintiffs' Allegations

Plaintiff Tina Gregory amassed over $20,000 in unsecured credit card debt causing her to experience financial difficulties.  (Doc. 77 at ¶¶ 91-93).  Gregory became aware of the CCR program through the CCR website and broadcast media.  (Doc. 77 at ¶ 94).  CCR used its website to promote itself as an "'attorney driven debt compromise program' which 'is among the most successful in the country, and by assessing No Up-Front fees you are able to participate with absolutely no risk.'"  (Doc. 77 at ¶ 95).  A CCR customer must pay a monthly sum into a trust account, and a local participating program attorney negotiates the customer's debt with his or her creditors.  (Doc. 77 at ¶ 99).

Gregory enrolled in the CCR program on January 15, 2008 and paid an enrollment fee of $1,834.70 which included a one-time fee of $120.00 to engage a local participating program attorney.  (Doc. 77 at ¶¶ 100-102).  Gregory's attorney fee was disbursed from her account but did not reduce the balance on her enrollment fee, and she was never contacted by a program attorney.  (Doc. 77 at ¶¶ 103-104).  Gregory was also charged a $49.95 monthly maintenance fee.  (Doc. 77 at ¶ 105).  Gregory cancelled her enrollment in the program on July 22, 2008.  (Doc. 77 at ¶ 109).  She alleges that the Defendants never made any payments to or attempted to settle her debt with her creditors.  (Doc. 77 at ¶¶ 110-111).  Gregory requested a full refund and the statutory penalty for a violation of the Georgia Debt Adjustment Act.  (Doc. 77 at ¶ 114).  She received a partial refund and a reply that CCR was a function of Taylor's law

practice and not a debt adjustment service subject to the Debt Adjustment Act.  (Doc. 77 at ¶¶ 116-117, 120).

Plaintiff Eddie Wells, Sr. amassed nearly $20,000 in unsecured credit card debt causing him to experience financial difficulties.  (Doc. 77 at ¶¶ 124-125).  Wells also learned of CCR through its website and broadcast media.  (Doc. 77 at ¶ 126).  Wells enrolled in the CCR program on May 28, 2010.  Wells paid $3,150.00 into the program which was retained by Preferred as fees for its debt adjusting services.  (Doc. 77 at ¶ 130).  Wells alleges that the Defendants never made any payments to or attempted to settle his debt with his creditors.  (Doc. 77 at ¶¶ 128-129).

The Plaintiffs allege that the Defendants were in fact providing debt adjustment services pursuant to the Debt Adjustment Act and that the Defendants charged fees in excess of the 7.5% cap allowed under the Act.  (Doc. 77 at ¶¶ 156, 167).

## II.  DISCUSSION

### A.    Burden of Proof

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (internal quotation marks and citation omitted).  "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"  *Id.* (citation omitted).  "'Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.'"  *Id.* (citation omitted).

**B.**   ***Diamond Crystal* Jurisdictional Analysis**

The Plaintiffs contend this Court has personal jurisdiction over the Moving Defendants pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91, and the Due Process Clause of the Fourteenth Amendment.   *Diamond Crystal* governs the analysis of these issues.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."   *Id.* at 1257-58 (internal quotation marks and citation omitted).   This two-step inquiry is necessary because the long-arm statute does not provide jurisdiction to federal courts in Georgia that is coextensive with procedural due process.   *Id.* at 1259.   Rather, the statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."   *Id.*   In short, jurisdiction that might appear to be conferred by statute may be negated by due process concerns, and vice versa.   *See id.* at 1261.

In this case, the Plaintiffs rely on the first and third subsections of the Georgia long-arm statute:

> A court of this state may exercise personal jurisdiction over any nonresident … in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) Transacts any business within this state; …
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or

> engages in any other persistent course of conduct, or derives substantial
> revenue from goods used or consumed or services rendered in this state;
> … .

O.C.G.A. § 9-10-91.  *Diamond Crystal* instructs federal courts to interpret Georgia's long-arm statute literally.  *Id.* at 1264.

However, for the Court to exercise jurisdiction over nonresident defendants, it is not enough that the long-arm statute is satisfied.  Personal jurisdiction must also adhere to the Due Process Clause of the Fourteenth Amendment.  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  "The heart of this protection is fair warning – the Due Process Clause requires 'that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there.'"  *Diamond Crystal*, 593 F.3d at 1267 (quoting *Burger King*, 471 U.S. at 474).  "Therefore, states may exercise jurisdiction over only those who have established 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"  *Id.*  (quoting *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

### C.    Jurisdiction Over the Moving Defendants

#### (1)    The Long-Arm Statute

The Plaintiffs argue that the Court has jurisdiction over the Moving Defendants under the first and third subsections of the Georgia long-arm statute.  Unlike subsection (3), subsection (1) does not require the commission of a tort, but it "is limited by due

process considerations." *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 269, 719

S.E.2d 489, 496 (2011).  Therefore,

> [j]urisdiction exists on the basis of transacting business in this state if (1)
> the nonresident defendant has purposefully done some act or
> consummated some transaction in this state, (2) if the cause of action
> arises from or is connected with such act or transaction, and (3) if the
> exercise of jurisdiction by the courts of this state does not offend
> traditional fairness and substantial justice.

*Id.* (quoting *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517-18, 631 S.E.2d

734, 737 (2006)).  Significantly, to transact business "a defendant need not physically

enter the state" to subject himself to the long-arm statute.  *Diamond Crystal*, 593 F.3d at

1264.  And courts may further consider the nonresident's mail, telephone calls, and

other intangible acts that occur while the defendant is outside of Georgia.  *Id.*  The

question is whether, upon analysis of all the defendant's tangible and intangible

conduct, "it can fairly be said that the nonresident [defendant] has transacted *any*

business within Georgia."  *Id.* (emphasis added).[2]

        The Plaintiffs argue that the Moving Defendants, through their actions as officers

and shareholders of Preferred, transacted a significant amount of business in Georgia.

The Plaintiffs also allege that the Moving Defendants' actions outside of this state have

caused tortious injuries to the Plaintiffs and that the Moving Defendants solicit business

and derive substantial revenue from services rendered in Georgia.  While Preferred may

have transacted business in Georgia, the Moving Defendants contend that they never

spoke to the Plaintiffs or any other customers in Georgia, they have not personally

---

[2] In *Diamond Crystal* the court adopted a literal definition of the words in the statute, such that "any"
means "to any extent" or "in any degree." 593 F.3d at 1264 n.18.  "'Transact' means 'to prosecute
negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.'"  *Id.*

attempted to settle any customers' debts on behalf of Preferred, and they have not

physically transacted business on behalf of Preferred in Georgia.  The Moving

Defendants, however, do not address whether they were primary participants in the

activities forming the basis for jurisdiction over Preferred.

      The Georgia Supreme Court has rejected the "fiduciary shield" doctrine because

it conflicts with the literal language of subsection (1).[3]  *Amerireach.com*, 290 Ga. at 266,

719 S.E.2d at 494.[4]  However, "jurisdiction over a corporate employee or officer 'does

not automatically follow from jurisdiction over the corporation[.]'"  *Id.* (quoting *Keeton v.*

*Hustler Magazine, Inc.,* 465 U.S. 770, 780 n.13 (1984)).  The Moving Defendants'

contacts with Georgia should not be judged according to the corporate Defendants'

activities in this state but, rather, must be assessed individually.  *Calder v. Jones*, 465

U.S. 783, 790 (1984).  Jurisdiction may be exercised over the Moving Defendants if they

were "primary participants in an alleged wrongdoing intentionally directed at a [Georgia]

resident."  *Id.*

      Based on the Plaintiffs' allegations in their third amended complaint, the

corporate Defendants are clearly subject to the jurisdiction of this Court.  The Plaintiffs

are not contending the Moving Defendants are subject to this Court's jurisdiction merely

because they managed the day-to-day operations of the corporate Defendants.  Rather,

the Plaintiffs allege that the Moving Defendants were the primary participants in creating

---

[3] The "fiduciary shield" doctrine prohibits a court from exercising personal jurisdiction over a nonresident individual based solely upon acts taken in his capacity as a corporate officer.  *Amerireach.com*, 290 Ga. at 264, 719 S.E.2d at 493.

[4] This Court is required to "interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court."  *Diamond Crystal*, 593 F.3d at 1258.

a scheme to provide debt adjustment services to Georgia residents which violated the Georgia Debt Adjustment Act and that the Moving Defendants carried out their scheme through Preferred and CCR.

"It is axiomatic that a corporation like [Preferred] cannot act other than through its officers, employees, and agents." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (citing *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985)). While a corporate officer is not personally liable for a corporation's acts solely because he serves in that capacity, personal participation in a corporation's wrongful activities subjects both the officer and the corporation to liability. *Ga. Cash Am., Inc. v. Greene*, 318 Ga. App. 355, 367-68, 734 S.E.2d 67, 76 (2012). The Plaintiffs have submitted supporting evidence to show that the Moving Defendants initiated and implemented the debt adjustment program. Further, the Moving Defendants' testimony shows each Moving Defendant was responsible for and exercised control over significant aspects of the debt adjustment program which targeted Georgia residents. For example, Miller and Mlynski acknowledge having control over the content of CCR's website and advertisements, respectively. The Plaintiffs allege that they learned of Preferred's debt adjustment services through CCR's website and broadcast media.

The Moving Defendants attempt to distinguish the holdings in *Amerireach.com* and *Calder* from the facts before this Court. They argue that the holdings of those two cases show that an employee must have personally participated in the conduct giving rise to the plaintiff's claim and have some sort of direct contact with the plaintiff to permit a court to exercise personal jurisdiction. The Court does not read the holdings of those cases so narrowly. Contrary to the Moving Defendants' assertion that the individual

defendants in *Amerireach.com* personally negotiated the contract at issue with the plaintiff and even traveled to Georgia for those negotiations, the plaintiff in that case merely alleged that the individual defendants "'directly facilitated ... [the LLC's] transaction of business in Georgia resulting in the unlawful conduct set forth' in the complaint and had 'been physically present in Georgia facilitating the unlawful conduct.'"  *Amerireach.com*, 290 Ga. at 269, 719 S.E.2d at 496.  Nothing in the plaintiff's allegations suggests that the individual defendants were primary participants in the contract at dispute.  Rather, her allegations indicated the defendants were primary participants in the company's business activities directed toward Georgia, and they had traveled to Georgia to further those activities.  In *Calder*, the defendants' activities directly targeted the plaintiff and not just residents of the forum state.  465 U.S. at 788-89.  However, the Supreme Court did not limit its holding to cases in which the defendant directed his or her activities at the plaintiff but, instead, indicated that the appropriate personal jurisdiction analysis focuses on whether the defendant's activities were directed toward the forum state.  *See id.* at 789-90 (noting that the defendants "intentional, and allegedly tortious actions, were expressly aimed at California" and "though [the defendants] remain[ed] in Florida, [they] knowingly cause[d] the injury in California").

Further, the Moving Defendants point out that the heightened pleading requirements in federal court did not apply in *Amerireach.com*, and thus, the Georgia Supreme Court's acceptance of the plaintiff's conclusory allegations to support personal jurisdiction is inapposite to this case.  The Moving Defendants summarily state that the Plaintiffs have not met their burden to satisfy the heightened pleading requirement.

However, the court accepted the plaintiff's allegations as true in *Amerireach.com* because the defendants "did not present any evidence controverting the allegations of the complaint" despite being permitted to introduce evidence outside of the pleadings to defeat jurisdiction.  290 Ga. at 270, 719 S.E.2d at 497.  While the Moving Defendants here have submitted declarations challenging the Court's jurisdiction, the Plaintiffs have satisfied their burden by submitting evidence in the form of the Moving Defendants' testimony to support jurisdiction.  The Moving Defendants' declarations focus on their lack of contacts with Georgia and the Plaintiffs.  They have not, however, rebutted the Plaintiffs' evidence that the Moving Defendants were the driving force behind the alleged fraudulent scheme directed at Georgia residents.

Thus, the Court must first consider whether it has personal jurisdiction pursuant to Georgia's long-arm statute before evaluating minimum contacts, and *Amerireach.com* informs the Court's analysis.  The Georgia Supreme Court noted that subsection (1) of the long-arm statute has "no explicit legislative limiting conditions[,]" and courts must give "appropriate breadth" to the "transacting any business" language.  *Id.* at 265-66, 719 S.E.2d at 493-94.  To meet the requirements under subsection (1), a nonresident defendant must purposefully do some act or consummate some transaction in the state.  Brooks's testimony confirms that Preferred's officers purposefully chose which states to conduct business in and marketed and advertised only in those states.  (Doc. 35 at 31:12-16).  From July 1, 2003 to August 26, 2011, 751 Georgia customers enrolled in Preferred's debt settlement program, and the Defendants received $1,252,959 in fees from those customers.  (Doc. 85-4 at ¶¶ 7-8).  Further, the Plaintiffs' causes of action

clearly arise from and are connected with the Moving Defendants' acts directed at Georgia residents.

The facts discussed above also satisfy subsection (3) of the long-arm statute because the Plaintiffs have alleged that the Moving Defendants have caused tortious injuries in Georgia through their acts outside of this state, and the Moving Defendants regularly solicited business and derived substantial revenue from Georgia residents.

The Plaintiffs may not be able to prove that any particular Moving Defendant conspired to violate the Georgia Debt Adjustment Act based on the evidence submitted, but the Plaintiffs' supporting evidence is sufficient to show the Moving Defendants were primary and joint participants in the alleged wrongdoing directed at Georgia residents and not just passive officers of Preferred.  Accordingly, the Plaintiffs have alleged sufficient facts to subject the Moving Defendants to personal jurisdiction under both the first and third subsections of the Georgia long-arm statute.

### (2)    Due Process

Two types of personal jurisdiction exist: general and specific.  General jurisdiction arises from the defendant's contacts with the forum state that "are unrelated to the cause of action being litigated." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).  General jurisdiction further requires continuous and systematic contacts between the defendant and the forum state.  *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002).  Here, general jurisdiction does not exist.  The Moving Defendants are residents of Illinois and Indiana, do not own property or an interest in any business based in Georgia, and have only been present in Georgia to change

planes in Atlanta or to attend seminars in Atlanta.  Further, the Plaintiffs have not alleged facts to suggest that general jurisdiction exists.

This narrows the question to whether the Moving Defendants are subject to specific personal jurisdiction.  Meeting specific jurisdiction requirements is less onerous: "[T]he fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum … and the litigation results from alleged injuries that arise out of or relate to those activities."  *Diamond Crystal*, 593 F.3d at 1267 (internal quotation marks and citation omitted).  "Put differently, the defendant must have 'purposefully availed' itself of the privilege of conducting activities – that is, purposefully establishing contacts – in the forum state and there must be a sufficient nexus between those contacts and the litigation."  *Id.*  Once the plaintiff makes this showing, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."  *Id.* (citations omitted).

Given that the Moving Defendants exercised substantial control over the operations of Preferred and CCR and directed their alleged fraud at Georgia residents, they are subject to essentially the same minimum contacts analysis as the corporate Defendants would be.  *See U.S. SEC v. Carrillo*, 115 F.3d 1540, 1548 (11th Cir. 1997).  The Moving Defendants chose to pursue the alleged scheme in Georgia by targeting its debt-burdened residents.  Thus, they purposefully availed themselves of the privilege of conducting activities in this state, and with 751 enrolled debt adjustment customers in less than ten years, their contacts with Georgia cannot be said to be random, attenuated, or fortuitous.  Further, the litigation here clearly arises from the activities of the debt adjustment program directed and managed by the Moving Defendants.  Thus,

the Moving Defendants had fair warning that their debt adjustment program would subject them to personal jurisdiction in Georgia courts.

Although the Moving Defendants have sufficient minimum contacts with Georgia, the exercise of personal jurisdiction over them must still comport with traditional notions of fair play and substantial justice.  In making this determination, the Court looks at *Burger King*'s fairness factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.  471 U.S. at 477.

The Moving Defendants argue that it would be extremely burdensome for them to defend a lawsuit in their personal capacities in Georgia.  They offer no facts to support this argument.  This sole assertion does not present the "compelling case" necessary to render jurisdiction unreasonable.  *Id.*  Georgia has a manifest interest in providing its residents a means of redress, and this interest justifies the imposition of "serious burdens" on nonresident defendants.  *Diamond Crystal*, 593 F.3d at 1274.  Thus, personal jurisdiction against the Moving Defendants is also proper pursuant to the Due Process Clause of the Fourteenth Amendment.

### D.   Motion for More Definite Statement

Pursuant to Fed. R. Civ. P. 8(a)(2), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The complaint should "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Harrison v. Benchmark Elecs.*

-15-

*Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (internal quotation marks and citations omitted).  Fed. R. Civ. P. 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

The Preferred Defendants argue that the Plaintiffs' third amended complaint is a shotgun pleading because it "fail[s] to articulate which defendants allegedly committed which wrongful acts." (Doc. 79 at 2).  Further, the Preferred Defendants contend that the Plaintiffs' allegations of fraud and negligent misrepresentations fail to comply with Fed. R. Civ. P. 9(b)'s specificity requirement.  The Plaintiffs, however, argue they have sufficiently alleged the Preferred Defendants' wrongful acts because the Plaintiffs have alleged that the Preferred Defendants acted in concert to violate the Georgia Debt Adjustment Act.

Although the Plaintiffs have alleged theories of piercing the corporate veil, alter ego, and joint venture, their allegations do not apprise the Preferred Defendants of which Defendant is alleged to have committed which act.  Accordingly, the Plaintiffs shall file an amended complaint no later than **December 9, 2013** that puts the individual and corporate Defendants on notice as to which wrongful acts are alleged to have been committed by each Defendant to the extent possible.

-16-

## III. CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss is **DENIED**, and the Preferred Defendants' motion for more definite statement is **GRANTED**.[5]

If the Moving Defendants continue to believe that they are not subject to the Court's personal jurisdiction or that they are entitled to judgment as a matter of law, then they may renew their motion to dismiss or move for summary judgment within **30 days** of the filing of the amended complaint.

**SO ORDERED,** this 21st day of October, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[5] The Moving Defendants' motion to dismiss the Plaintiffs' second amended complaint (Doc. 70) and the Preferred Defendants' motion for more definite statement of the Plaintiffs' second amended complaint (Doc. 71) are **DENIED as moot**.