# ENROLLED MEMBERS REVOCABLE TRUST AGREEMENT II

**THIS ENROLLED MEMBERS REVOCABLE TRUST AGREEMENT II,** hereinafter referred to as the "Trust Agreement", is signed this ____ day of _____, 2009 and effective October 1, 2009 ("Effective Date"), by and between the following specific and individual parties:

1. The **individual makers** of a certain Special Power of Attorney Agreement who have directed money into the Trust to be used in conjunction with other legal administrative services, these **individual makers** known and unknown at the time of the execution of this document and including those **individual makers** who execute a Special Power of Attorney Agreement after the date of the execution of this Trust Agreement, all of whom are identified according to the Special Power of Attorney Agreements which are attached hereto as Exhibit A, which shall be amended on a periodic basis by the addition and removal of certain **individual makers** (collectively these **individual makers** are referred to as "**Settlors**" and individually each **individual maker** is referred to as "**Settlor**"), and

2. **MARSHALL & ILSLEY TRUST COMPANY, N.A.** (or their properly appointed successor), with principal Indiana address of 135 N. Pennsylvania St. Suite 900, Indianapolis, Indiana 46204 ("**Trustee**").

## PREAMBLE

THIS DOCUMENT SHALL BE INTERPRETED AND CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF INDIANA, REGARDLESS OF THE DOMICILE OF ANY PARTY. ALL EVENTS RELATED TO THIS TRUST SHALL BE DEEMED TO HAVE OCCURRED IN THE STATE OF INDIANA, REGARDLESS OF THE ACTUAL LOCATION OF ANY OCCURRENCE.

THIS TRUST AGREEMENT CREATES A TRUST RELATIONSHIP DESIGNED TO COLLECT, HOLD, SAFEGUARD, PROTECT, DISTRIBUTE AND PRUDENTLY INVEST ALL THE FUNDS DELIVERED TO THIS TRUST, ALL IN STRICT ACCORD WITH THE TERMS OF THIS TRUST AGREEMENT AND ALL APPLICABLE LAWS, RULES AND REGULATIONS.

THIS TRUST AGREEMENT SPECIFICALLY NAMES THE IDENTITY OF THE BACK OFFICE SERVICE PROVIDER, TOGETHER WITH THE SPECIFIC DUTIES AND RESPONSIBILITIES ASSIGNED TO THE BACK OFFICE SERVICE PROVIDER IN THE SUSTENANCE AND DEVELOPMENT OF THE TRUST AND THE GOALS OF THE TRUST.

THIS TRUST AGREEMENT CREATES SPECIFIC INSTRUCTIONS FOR THE TRANSFER OF TRUST FUNDS TO THE BENEFICIARIES

THIS TRUST COMPELS THE BACK OFFICE SERVICE PROVIDER TO USE ITS BEST EFFORTS TO ASSIST THE TRUSTEE WITH COMPLIANCE WITH ALL APPLICABLE FEDERAL, STATE AND LOCAL LAWS.

THE TRUST SHALL CONTINUE IN EFFECT UNTIL PROPERLY REVOKED ACCORDING TO THE TERMS HEREIN OR THE EXPIRATION OF THE TERM, WHICHEVER IS SOONER.

## WITNESSETH:

WHEREAS, the Settlors are persons, known and unknown at the time of the execution of this Agreement, who have unsecured debts and obligations to third-party credit card companies and other creditors, and

WHEREAS, Settlors will make additional, systematic and regular payments to the Trust with the expectation of adherence with the Trust Agreement and in accordance with their various other agreements, and

WHEREAS, the Back Office Service Provider, as named below, shall use its human and financial resources, in combination with the resources delivered to it by the Trust,
- to identify persons in the marketplace who could utilize the services of the Credit Card Relief Program,
- to convince those persons to become "Settlors" under the Trust,
- to contract with the vendors required to accomplish the goals of the individual Settlors and the Trust and
- to be aware of the regulatory and legal restrictions and developments of the various state and federal applicable jurisdictions.

WHEREAS, the Trustee shall hold Trust Funds in a separate and specific Trust Account for the benefit of Beneficiaries, and

WHEREAS, according to the terms of the attached Exhibit B, Trustee and the Trust hereby contracts with Back Office Service Provider to perform back-office support, Beneficiary management, accounting and regulatory responsibilities and related functions.

### ARTICLE I- General Provisions

(A). **Definitions.** The following definitions shall apply to this Trust Agreement and the Trust:

1. **"Beneficiaries"** means the unsecured creditor or holder of credit card debt included by the Settlor in the Program, together with the designee of the original creditor and their legal representatives or such other appropriate party as may be later determined.
2. **"Effective Date"** means the date of the execution of the Trust Agreement.
3. **"Special Power of Attorney Agreement"** means the document executed by the Settlor granting various rights to Back Office Service Provider and directing Dakich & Associates to negotiate on behalf of the Settlor.
4. **"Back Office Service Provider"** means Credit Card Relief, Inc., incorporated in both Indiana and Illinois together with Preferred Financial Solutions, Inc., an Indiana corporation and all the related vendors chosen by the Back Office Service Provider, including and specifically Dakich &

Associates as the mediation law firm and the Local Participating Program Attorneys (LPPA) for the individual states as deemed necessary by Dakich & Associates.
5. **"Program"** shall be the Credit Card Relief Program.
6. **"Settlor(s)"** has the meaning as stated in the individual parties section of this Trust Agreement.
7. **"Tax Advice"** means any counsel or opinion of any sort or kind related to the laws pertaining to taxation. In the event either the Trustee, Back Office Service Provider, or any of the vendors to either the Trustee or the Back Office Service Provider, including Dakich & Associates, gives any party any Tax Advice of any type or sort, the Tax Advice will be accompanied by a disclaimer informing the party that the Trustee, the Back Office Service Provider and Dakich & Associates are not qualified to deliver Tax Advice.
8. **"Trust Account"** means a specific account that holds instruments that are FDIC insured, or other financial obligations backed by the full faith and credit of the government of the United States of America, or investment grade corporate bonds with a Moody's or Standard & Poors rating of BAA or better, or agency instruments backed by the taxing authority of the government of the United States of America, these instruments or obligations held for the specific benefit of the Settlors at an approved financial institution these instruments or obligations held for the specific benefit of the Settlors at an approved financial institution.
9. **"Trust Agreement"** means the Enrolled Members Revocable Trust Agreement II executed between these parties on the Effective Date.
10. **"Trust Funds"** means the monies delivered to the Trust by the Settlors.
11. **"Trustee"** has the meaning as stated in the individual parties section of this Trust Agreement.

**(B). Contractual Obligation to Make Payments into Trust Account.** Settlors are obligated to, at any time and in accordance with the Trust Agreement and the various other agreements that are a part of the Program, transfer to Trust any form of United States currency in a manner acceptable to Trustee to be held in Trust Account pursuant to the terms of this Trust Agreement and in an amount agreed to by the parties. Provided the terms and conditions related to the transfer of any money have met the approval of Trustee, Trustee shall accept additional money into the Trust Account subject to this Trust Agreement.

**(C). Revocability by Settlor(s).** The Trust is revocable according to the laws of the State of Indiana and the following terms and conditions:
   1. In order for Settlor to revoke its individual participation in the Trust and its obligation to make the payments required by the various agreements, the following two (2) events must occur:
      i. Settlor must inform the Trust of its intention to revoke its involvement with herein by informing the Back Office Service Provider of its intention to revoke its interest in the Trust, and
      ii. Trustee must agree to such revocation of interest.
Without evidence to the contrary, the Back Office Service Provider is hereby authorized to act on behalf of the Trustee in matters of revocation and proposed revocation by any Settlor.

   2. Absent the written agreement of the Trustee, the Settlors may revoke the Trust with an order from a competent court after a presentation of evidence in the presence of Trustee or its representative.

**(D). Procedure for Revocation by Settlor or Group of Settlors.** The following terms shall apply:

   1. In the event of any revocation of the Trust, whether for and on behalf of a single Settlor, multiple Settlors or the entire Trust, the Back Office Service Provider shall use its discretion to manage the termination of the relationship between the Settlor(s) and the Trust, including but not restricted to making directions as to the movement or disbursement of any Trust Funds to any Beneficiaries or third-parties,

3

the return of any money to the Settlor and use its judgment and experience in the management of any bankruptcy matter that any Settlor may approve.

**2.** In the event of the death of a Settlor, the Special Power of Attorney shall be expired, the Trust revoked as to the deceased Settlor and the portion of the Trust Funds returned to the estate of the deceased Settlor as soon as possible after sufficient documentation of the proper destination of the money.

**3.** IN THE EVENT OF THE REVOCATION OF THE TRUST IN ITS ENTIRETY, THE REMAINING TRUST FUNDS WILL BE DIRECTED TO THE SUCCESSOR TRUST CREATED BY ANOTHER TRUST AGREEMENT OR RETURNED TO THE SETTLORS, THE DESTINATION OF THE TRUST FUNDS BEING AT THE OPTION OF THE TRUSTEE AND APPROVED BY BACK OFFICE SERVICE PROVIDER AND THE HOLDER OF THE SPECIAL POWER OF ATTORNEY.

**(E). Trust Accounts and Funding.** This Trust shall be funded only by the contributions of Settlors and any interest gained thereon. Trust Funds shall be maintained in a segregated, third-party administered Trust Account held at Ilsley, acting in its capacity as Trustee. In the event of the change in Trustee and provided proper notice to each Settlor and the Back Office Service Provider, the Trust Account may be removed to a different financial institution.

## ARTICLE II- Trustee

### (A). General Statement of Trustee Powers.

The Trustee (and each Successor Trustee) has the general power to deal with Trust Funds as freely as the Settlor might in the handling of the Settlor's own affairs. The Trustee is charged with using the judgment and care, under the circumstances then prevailing, that persons of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Further, the Trustee shall undertake reasonable actions to safeguard Trust Funds until such time as the Trust Funds are distributed to a Beneficiary, distributed to another Trust, or returned to the Settlor. In addition to the powers conferred on the Trustee by law, such general power may be exercised independently and without the prior or subsequent approval of any court of judicial authority. No person who deals with the Trustee shall be required to inquire into the propriety of any of the Trustee's actions, nor shall any person who transfers money or other property to the Trustee be required to see to the application of such money or other property.

### (B). Executory Agreements.

The Settlors require the Trustee to employ or otherwise engage the Back Office Service Provider to provide the necessary "back office" support and mediation law firm's necessary support staff required to perform the debt mediation and compromise services as bargained for by the Settlors.

### (C). Trustee's Obligations.

Trustee shall have the following obligations:

1. Account for all monies delivered to Trust during the life of the Trust Agreement,
2. Intentionally left blank
3. During the period in which the Trust is in effect and when properly authorized under the

4

terms of this Trust, disburse funds in accordance with the authorized instruction of Back Office Service Provider, as applicable, or Dakich & Associates, as required for the fulfillment of the terms of an individual settlement of a debt for a Settlor.

   **4.**   Reimburse to the Back Office Service Provider any expenses incurred by the Back Office Service Provider related to deposit bank accounts in support of the goals of this Agreement and pursuant to the Trust Agreement. The Trustee shall not have the responsibility to verify either the reason or the specific charges sought for the reimbursement by the Back Office Service Provider, who shall only seek reimbursement when the Trust has a positive net balance.

   **5.**   Deliver to the Back Office Service Provider, on no less than a monthly basis, an accounting of all activities of the Trust Account, including but not restricted to Trust Account balance, disbursements, deposits, interest or investment income, expenses and any fees or expenses,

   **6.**   Promptly remit the amount of Trust Funds directed by Dakich and Associates to specified Beneficiaries ,

   **7.**   Work with Back Office Service Provider for the purpose of accomplishing the goals and objectives of Settlors and Beneficiaries, including but not limited to paying the fees due Back Office Service Provider and other service providers, including but not limited to banking fees associated with and necessary to the operation of the Trust. If said fees are advanced by the Back Office Service Provider on behalf of the Settlors and the day to day operation of the Trust, then the Back Office Service Provider shall be entitled to full and complete reimbursement from the Trust for all service fees assessed by the banking institution serving as the main and supporting depository for all Trust related business activities. Said bank depository accounts operated for the sole benefit of the Trust shall bear the Federal Tax Identification Number of the Enrolled Members Revocable Trust Number Two. This tax identification number shall be requested by and be in the name of the Trustee.

   **8.**   Take any and all legal and responsible actions required to protect and preserve Trust Funds against any threat.

## (D). Trustee Fee and Expenses Reimbursable to Trustee.

The Trustee shall be paid an annual fee of point eighty hundreds percent (0.80%) of the Average Daily Balance of the Trust Funds, computed and debited in monthly installments in arrears ("Trustee Fee"). All Trustee Fees shall be taken from profits earned on the corpus of the Trust and not directly from the corpus of the Trust. Each Trustee Fee debit shall be noticed to Back Office Service Provider prior to the debit. The Trustee shall be entitled to a Minimum Annual Fee of no less than thirty six hundred ($3600.00).

## (E) Delivery of Information and Notices to Settlors

In the event the Trustee shall be required to deliver any information to the Settlor(s), including any legal notices as detailed herein, the Trustee shall deliver the notice to the Back Office Service Provider and it shall be the responsibility of the Back Office Service Provider to make all required deliveries to the Settlors. Dakich and Associates is hereby directed to assist the Back Office Service Provider in making such deliveries and to certify back to the Trustee that such deliveries have been made.

## (F). Restrictions on Investments.
Trustee shall invest in securities that are FDIC insured, or other financial obligations backed by the full faith and credit of the government of the United States of America, or investment grade corporate bonds with a Moody's or Standard & Poors rating of BAA or better, or agency instruments backed by the taxing authority of the government of the United States of America, these instruments or obligations held for the specific benefit of the Settlors at an approved financial institution these instruments or obligations held for the specific benefit of the Settlors at an approved financial institution.

**(G). Trustee Power Limitations.** Trustee's powers are specifically limited as follows:

    **1.**    Trustee is not required to negotiate and settle accounts with Beneficiaries on behalf of Settlors without the specific instructions of the Back Office Service Provider.

    **2.**    Trustee shall operate as per the requirements and prohibitions established herein and shall consult the Indiana Trust Code for circumstances not described in this Trust Agreement.

**(H). Bond Requirements.**

Trustee may, unless required by statute, serve without the necessity of providing a bond and shall not be required to provide a bond or other surety so long as the Trustee's stated credit rating does not drop below "investment grade" or what may be otherwise specified as a "BAA" rating.

**(I). Successor Trustee Powers.**

The following terms shall apply:

    **1.**    Each Successor Trustee shall have all of the titles, powers, and obligations of the Trustee succeeded.

    **2.**    Any Successor Trustee shall accept the Trust Accounts, all books and records delivered by or for a predecessor Trustee without incurring any liability or responsibility for accepting such assignment.

    **3.**    Each Successor Trustee shall not be liable or responsible in any way for any acts or defaults of any predecessor Trustee, nor for any loss or expense from or occasioned by anything done or neglected to be done by any predecessor Trustee, but such Successor Trustee shall be liable only for his own acts and defaults in respect to the property actually received by the Trustee. This sub-section shall be interpreted in the broadest possible manner to insulate the Successor Trustee from the acts of the prior

**(J). Trustee Term.**

The Trustee shall serve for a term of five (5) years. The services of the Trustee shall terminate automatically at the end of the specified five (5) year period, unless renewed in writing by the Settlors prior to the date of termination of this Trust Agreement. For all purposes, the date of termination of this Agreement shall be five (5) years from the Effective Date.

**(K). Trustee Removal.**

The Trustee may be immediately removed in mid-term only for cause, upon written notice to the Trustee by a majority of the Settlors or through the holder of the Special Power of Attorney for Settlors. Cause shall include but not be limited to: gross malfeasance, gross nonfeasance, intentional tortuous acts, and/or criminal acts, in the opinion of the holder of the majority of the Special Power of Attorney for the Settlors. The failure to account for Trust property as set forth herein, may be treated as gross nonfeasance "per se" for purposes of removal of the Trustee.

### ARTICLE III-Distribution of Trust Funds; Indemnification

(A). Distribution Requirements.

Notwithstanding any other provision of this Agreement, the Trustee shall distribute such Trust Funds according to the following provisions:

Payment to Local Participating Program Attorneys.
As directed by Dakich and Associates, the Trustee shall make a payment of the agreed-upon amount to the Local Participating Program Attorney ("LPPA") as a legal fee to the LPPA for its services related to the individual Settlor.

Mediation Funds.

Pursuant to written instruction from Dakich & Associates, the Trustee shall distribute Trust Funds in specific amounts to Beneficiaries without delay, said money to be applied to the settlement of a specified account(s), or otherwise as required, for and on behalf of individual Settlors.

Trust Fees and Costs.

Upon written or electronic application or submission to the Trustee from Dakich & Associates, the Trustee may then make payment for fees and expenses due and payable as incurred on behalf of Settlors for the purpose of compromising a debt enrolled into the Program by an individual Settlor, including settlements and reasonable costs of compliance.

Identification of Fees.

It is agreed that the individual account of each Settlor and all Settlors collectively will be assessed a monthly maintenance fee and other charges according to the specific terms and conditions of other agreements. The payment of these fees will be from the Trust Funds, regardless of whether the Trust Funds were contributed by Settlors or gained from the investment of Trust Funds.

### (B). Undistributed Trust Funds and Income Added to Trust Principal.

Any undistributed Trust Funds, regardless of whether such monies were contributed from Settlors or generated through investment, shall remain in the Trust and shall not be distributed except in accordance with the terms and conditions of this Trust Agreement. In the event there are Trust Funds in the Trust Account at the time of the termination or expiration of the Trust, regardless of whether the Trust Funds were gained from investment or contribution by Settlor, all Fees shall be paid. Any surplus remaining after the payment of any fees shall be distributed to the charitable organization of the choosing of the Trustee. The accumulated income is taxed to the Trust and not the Trustee or the Back Office Service Provider.

### (C). Indemnification.

Each party hereby indemnifies and holds the other party's, and their respective officers, agents, employees, successors, and assigns harmless from any and all claims, losses, damages and expenses, including, but not limited to, reasonable attorneys' fees and court costs, that arise directly or indirectly as a result of this Trust Agreement. In the event of litigation initiated related to this Trust Agreement, the party who has been sued agrees to give prompt notice of any claim or suit subject to indemnification to the other parties and all parties shall reasonably cooperate with the other parties in furnishing information

and assistance necessary for defending against the claim or suit, and all parties retain the option to participate in the defense at its own expense.

### (D). Limitation on Liability.

EXCEPT WITH RESPECT TO INDEMNIFICATION FOR THIRD PARTY CLAIMS UNDER THESE TERMS AND CONDITIONS, NO PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, OR SPECIAL DAMAGES (INCLUDING WITHOUT LIMITATION LOST REVENUE OR PROFITS) ARISING FROM OR RELATED TO THIS TRUST AGREEMENT OR ANY CONTRACT HEREUNDER. THIS LIMITATION SHALL APPLY TO ALL CAUSES OF ACTION, INCLUDING WITHOUT LIMITATION BREACH OF CONTRACT, BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, FRAUD, MISREPRESENTATION AND OTHER TORTS.

## ARTICLE IV-<Intentionally Left Blank>

## ARTICLE V-Beneficiaries

### (A). Beneficiary Equitable Interest.
This Agreement does NOT create an equitable interest in the Trust or any Trust Funds for the Beneficiary(ies) of any Settlor or the Settlors in their totality. Notwithstanding any provision of Trust Agreement, no interest (including, but not limited to, any interest in future income or principal) of any Beneficiary or Settlor, shall be subject to any attachment or encumberment by any third-party, nor to the claims of any creditor other than designated Beneficiaries. Trust Funds shall not be subject to claims by the Settlor themselves except for the original contribution that may be claimed by and refunded to the Settlor, subject to offsets previously agreed to by the Settlor.

## ARTICLE VI-Miscellaneous Provisions

### (A). Written Agreement; Unanimous Consent to Modification.

This Trust Agreement is the entire Trust Agreement and may not be changed or amended without the express prior written consent of Trustee and Back Office Service Provider on behalf of the Settlors.

### (B). Validity of Trust.

This Trust Agreement and the disposition hereunder shall be construed and regulated and its validity and effect determined by the laws of the State of Indiana, except as otherwise provided for herein.

### (C). Trust Interest Dividends and Profits.

Interest, dividends and profits from bond transactions and all investments shall be used to defray the costs of compliance incurred by the Back Office Service Provider in the furtherance of the goals of this Trust Agreement.

### (D). Headings.

Headings are for convenience only and have no relevance to interpretation of this Trust Agreement.

### (E). Notice.

Any legal notice ("Notice") to be delivered to the Trust or the Trustee shall be delivered to the address first listed above. Any Notice to be delivered to the Settlors shall be delivered to the Back Office Service Provider, whose responsibility it will be to determine the best possible manner to disseminate the Notice to each individual Settlor and, within a reasonable amount of time, disseminate the Notice to each Settlor.

### (F). Severability.

Should any portion, clause or term of this Trust Agreement be found by a court of competent jurisdiction to be illegal, unenforceable, or in contradiction to some other term in the Trust Agreement or any state or federal law, then the offending section of this Trust Agreement is severed from the agreement and the remainder of the Trust shall be fully enforceable and effective to carry out the terms of the Trust and the Trust Purpose.

### (G) Assignment and Delegation.

No party hereto may assign or delegate its authority, rights or obligations except in strict compliance with the terms of this Agreement.

### (H). Settlors' Signatures.

This Trust Agreement does not require the individual signature of each Settlor.

### (I). Recording.

There is no requirement that this Trust be recorded with any governmental entity.

### (J). Property Rights.

There are no property rights created by this Trust Agreement, other than those specifically stated herein.

SIGNATURE PAGES TO FOLLOW

**IN WITNESS WHEREOF,** the parties have executed this Trust Agreement on the day and year first above written.

## FOR AND ON BEHALF OF THE SETTLORS:

Date: _____     By: _____
                                                                     Jeffery N. Brooks
                                                                     Chairman and President
                                                                     Preferred Financial Solutions, Inc.
                                                                     "Back Office Service Provider"

State of Indiana    )
                        ) SS:
County of Marion  )

Before me, the undersigned, a Notary Public duly commissioned and acting in and for the said County and State, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and stated that he executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this _____ day of _____, 2009.

My Commission Expires:
_____     _____
                                              Notary Public

My County of Residence:
_____     _____
                                              Printed

**TRUSTEE:**

Date: _____  By: _____
Robert H. Everitt, Vice President & Trust Officer
MARSHALL & ILSLEY TRUST CO., N.A.
135 N. Pennsylvania St. Suite 900
Indianapolis, IN 46204
317-269-2625
317-269-2169 Fax

State of Indiana    )
                    ) SS:
County of Marion    )

Before me, the undersigned, a Notary Public duly commissioned and acting in and for the said County and State, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and stated that he executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this __th day of _____, 2009.

My Commission Expires:

_____    _____
                                  Notary Public
My County of Residence:
                                  _____
_____
                                  Printed

Date: _____      By: _____
                                                     David G. King, Vice President & Trust Officer
                                                     MARSHALL & ILSLEY TRUST CO., N.A.
                                                     135 N. Pennsylvania St. Suite 900
                                                     Indianapolis, IN 46204
                                                     317-269-2625
                                                     317-269-2169 Fax

State of Indiana    )
                        ) SS:
County of Marion )

Before me, the undersigned, a Notary Public duly commissioned and acting in and for the said County and State, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing instrument, and stated that he executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this __th day of _____, 2009.

My Commission Expires:

_____      _____
                                                   Notary Public

My County of Residence:

_____      _____
                                                   Printed

This Document drafted by:
Thomas P. Dakich, 4810-49
Baldwin & Dakich
One Market Square Center
151 N. Delaware Street, Suite 1950
Indianapolis, Indiana 46204
317.636.4529

Exhibit A    Listing of all Settlors and Amount held in Trust for Each Settlor
Exhibit B    Special Power of Attorney

PFS 0321