**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **TINA M. GREGORY and EDDIE JAMES WELLS, SR., individually and as Class Representatives for all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 5:11-CV-422(MTT)** |
| **PREFERRED FINANCIAL SOLUTIONS,** *et al.,* | ) ) ) | |
| **Defendants.** | ) ) ) | |

## ORDER

Plaintiffs Tina M. Gregory and Eddie James Wells, Sr. filed this putative class action on behalf of themselves and other similarly situated potential class members. They contend the Defendants violated Georgia's Debt Adjustment Act, O.C.G.A. § 18-5-1, *et seq.* by collecting fees far in excess of the fees allowed by the Act for debt adjustment services.  The Defendants claim they are engaged in the practice of law, which is exempted from the Act.  The Plaintiffs call this claim a sham.

The Plaintiffs have moved to certify the class.  (Doc. 97).  For the following reasons, the motion is **GRANTED in part** and **DENIED in part**.

## I.  FACTUAL BACKGROUND

Defendant Preferred Financial Solutions, Inc. ("Preferred") d/b/a Credit Card Relief ("CCR") is an Indiana corporation engaged in debt adjustment services.  (Doc. 77 at ¶ 38).  CCR is not a separately owned and operated entity but rather a marketing name "to communicate with potential clients for financial solutions."  (Doc. 85-2 at

23:15-21).  Defendants Jeffery Brooks, Larry D. Wilson, Steve Mlynski, and Daniel

Yuska are officers and shareholders of Preferred.  Defendants Rhonda Roell-Taylor and

Laquetta Pearson are attorneys licensed to practice law in Georgia who purportedly

performed services for Georgia residents on behalf of Preferred as local participating

program attorneys ("LPPAs").  (Doc. 77 at ¶¶ 24, 27).  Defendant Thomas P. Dakich

d/b/a Dakich & Associates is an attorney licensed to practice in Indiana and served as

Preferred's "national mediation counsel."  (Doc. 77 at ¶¶ 50-51).  Defendant Jeff

Whitehead is an attorney licensed to practice in Illinois and served as Preferred's

"national mediation counsel" after Dakich left the position.  (Doc. 77 at ¶ 30).

Plaintiffs Tina Gregory and Eddie Wells, Sr. are former customers of Preferred's

debt adjusting services.  Gregory, who had more than $20,000 in unsecured credit card

debt, became aware of the CCR program through the CCR website and broadcast

media.  (Doc. 77 at ¶¶ 91-94).  Gregory enrolled in the CCR program on January 15,

2008 and paid an enrollment fee of $1,834.70, which included a one-time fee of $120.00

to engage an LPPA.[1]  (Doc. 77 at ¶¶ 100-102).  Gregory's attorney fee was disbursed

from her account but did not reduce the balance on her enrollment fee, and she was

never contacted by an LPPA.  (Doc. 77 at ¶¶ 103-104).  Gregory was also charged a

$49.95 monthly maintenance fee.  (Doc. 77 at ¶ 105).  Gregory cancelled her enrollment

in the program on July 22, 2008.  (Doc. 77 at ¶ 109).  She alleges the Defendants never

made any payments to or attempted to settle her debt with her creditors.  (Doc. 77 at ¶¶

110-111).  Gregory requested a full refund and the statutory penalty for a violation of the

---

[1] As discussed below, enrollees are able to pay enrollment fees because Preferred instructs them to stop paying creditors and instead send payment to Preferred for deposit into a "trust account."

Debt Adjustment Act.  (Doc. 77 at ¶ 114).  She received a partial refund and a reply that CCR was a function of Roell-Taylor's law practice and not a debt adjustment service subject to the Act.  (Doc. 77 at ¶¶ 116-117, 120).

Wells also had nearly $20,000 in unsecured credit card debt causing him to experience financial difficulties, and he too learned of CCR through its website and broadcast media.  (Doc. 77 at ¶¶  124-126).  Wells enrolled in the CCR program on May 28, 2010.  Wells paid $3,150.00 into the program which was retained by Preferred as fees for its debt adjusting services.  (Doc. 77 at ¶ 130).  Wells alleges the Defendants never made any payments to or attempted to settle his debt with his creditors.  (Doc. 77 at ¶¶ 128-129).

The Plaintiffs allege the Defendants have violated the Debt Adjustment Act by charging their clients fees in excess of those authorized by the Act.  Preferred restructured the CCR program in 2003 to integrate the LPPAs in response to an amendment to the Debt Adjustment Act which provided an exemption from compliance with the Act's requirements for debt adjusting services incurred in the practice of law in Georgia.  (Doc. 35 at 38:3-11).  The Plaintiffs allege attorneys Pearson and Roell-Taylor were recruited by the national mediation counsel for the sole purpose of circumventing the requirements of the Act.

The Defendants promoted CCR through its website as an "'attorney driven debt compromise program' which 'is among the most successful in the country'" that allowed clients to participate at "absolutely no risk" by assessing no up-front fees.  (Doc. 77 at ¶ 95).  The CCR website advised prospective clients that, after discussing the program with an enrollment specialist, an underwriter would review the client's paperwork and

establish the client's monthly commitment to be paid into a trust account.  (Doc. 77 at ¶ 99).  Prospective clients were also informed they would be assigned an LPPA who would develop a specific strategy to eliminate their debt.  (Doc. 77 at ¶ 99).

After a debtor who was interested in joining the program worked with the enrollment specialist and underwriter, the debtor was required to sign a trust agreement that allowed the trustee to debit the debtor's checking or savings account for the monthly commitment.  The debtor was then instructed to send payments to the trust account, from which Preferred collected its fees, in lieu of paying his creditors.  The Plaintiffs allege this trust was controlled by Preferred rather than an independent trustee.  Preferred told the trust when to pay the debtor's 5% or 7% enrollment fee, the $39.95 or $49.95 monthly maintenance fee, and the 25% settlement fee to Preferred. (Doc. 35 at 65:7 – 66:6).

After Preferred completed the enrollment portion of the CCR program, it passed the client's file to the national mediation counsel, Dakich and later Whitehead, who was responsible for mediating the client's debt once sufficient funds from the client's monthly commitment had accumulated in the trust account.  Prior to mediating the debt, Dakich or Whitehead, who were not licensed to practice law in Georgia, would refer the client to a Georgia-licensed LPPA for the LPPA to determine whether the client should be accepted into the CCR program.

The Plaintiffs allege the Defendants' scheme is designed to operate without any input from the LPPA; again, the LPPA is simply a device to avoid the Debt Adjustment Act's limitations on debt adjustment services.  A letter from Whitehead to Pearson describes the LPPA's role, or lack thereof, in the CCR program.  The LPPA was

-4-

directed to review the debtor's file within two days of receipt and determine whether the
debtor was "best served by becoming a client of [the LPPA's] office and a member of
the Enrolled Members Trust."  (Doc. 66-7 at 2).  The LPPA was instructed to notify
Whitehead's office of her determination.  (Doc. 66-7 at 2).  If the LPPA failed to notify
Whitehead of her determination, however, Whitehead simply would assume the debtor
was accepted as a client of the LPPA's firm.  (Doc. 66-7 at 2).  The LPPA performed no
role in mediating the client's debt or handling the client's financial affairs, with the sole
exception of the ability to disapprove the settlement agreement mediated by the national
mediation counsel.  (Doc. 66-7 at 3).  But if the LPPA did not reply to the national
mediation counsel regarding the settlement offer, the settlement was deemed finalized
and completed.  (Doc. 66-7 at 3).

Once Dakich or Whitehead settled a client's debt, Preferred informed the trust to
pay 25% of the amount saved by the debtor to Preferred.  (Doc. 66-6 at 2).  The
attorneys involved with the CCR program did not receive a portion of the 25%
settlement fee.  (Doc. 35 at 67:23-25).

From the time of the Debt Adjustment Act's amendment to the time this action
was filed, Preferred had 751 customers in Georgia who paid approximately
$1,252,959.00 in fees for debt adjusting services.  The Plaintiffs assert that the
Defendants constructed an elaborate scheme to circumvent the fee limitations of the Act
by claiming their debt adjustment program qualifies for the Act's exemption for debt
adjusting services incurred in the practice of law.  The Plaintiffs further allege the
Defendants have committed fraud, misrepresented the efficacy of their debt settlement

program, and breached their fiduciary duties to putative class members by failing to

inform them the CCR program would most likely not be successful.

## II.  DISCUSSION

### A.    The Georgia Debt Adjustment Act

The Debt Adjustment Act limits the fees that may be charged by businesses

engaged in debt adjustment services:

> In the course of engaging in debt adjusting, it shall be unlawful for any
> person to accept from a debtor who resides in this state, either directly or
> indirectly, any charge, fee, contribution, or combination thereof in an
> amount in excess of 7.5 percent of the amount paid monthly by such
> debtor to such person for distribution to creditors of such debtor[.]

O.C.G.A. § 18-5-2.  The Act defines "debt adjusting" to include:

> [D]oing business in debt adjustments, budget counseling, debt
> management, or debt pooling service or holding oneself out, by words of
> similar import, as providing services to debtors in the management of their
> debts and contracting with a debtor for a fee to:
>
> (A) Effect the adjustment, compromise, or discharge of any account, note,
> or other indebtedness of the debtor; or
>
> (B) Receive from the debtor and disburse to his or her creditors any
> money or other thing of value.

O.C.G.A. § 18-5-1(1).  Those engaged in debt adjusting services must "disburse to the

appropriate creditors all funds received from a debtor, less any fees authorized by this

chapter, within 30 days of receipt of such funds."  O.C.G.A. § 18-5-3.2(a).  However, the

Debt Adjustment Act provides an exemption from all requirements under the Act for

"situations involving debt adjusting incurred in the practice of law in this state."

O.C.G.A. § 18-5-3.

Any person[2] who violates O.C.G.A. § 18-5-2 or O.C.G.A. § 18-5-3.2(a) is "liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00," and a debtor has the right to bring a cause of action directly against persons who violate these provisions.  O.C.G.A. § 18-5-4(b)(2).

**B.      Class Certification Standard**

The Plaintiffs move to certify a class, defined as:

> All persons who, while residing in the State of Georgia, received Debt Settlement and/or Debt Adjusting services from the Defendants on or after July 1, 2003, and from whom the Defendants accepted, either directly or indirectly, any charge, fee, contribution, or combination thereof.[3]

Fed. R. Civ. P. 23 governs the certification and management of class actions in federal courts.  To maintain a class action, Rule 23(a) requires the putative class to satisfy four prerequisites, and the class action may proceed only if it is one of the three types identified in Rule 23(b).  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citation omitted).  The Court must conduct a "rigorous analysis" to ensure Rule 23's prerequisites are satisfied prior to certifying a class.  *Id.* at 1266 (citations omitted).  "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."  *Id.* (internal quotation marks and citations omitted).

Specifically, Rule 23(a) requires a plaintiff to show:

---

[2] "'Person' means an individual, corporation, partnership, trust, association, or other legal entity." O.C.G.A. § 18-5-1(2).

[3] The Defendants do not contend the class definition is inappropriate or deficient, and the Court finds the class is appropriately defined.

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the claims
> or defenses of the representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four prerequisites of Rule 23(a) are commonly referred to

as 'numerosity, commonality, typicality, and adequacy of representation, and they are

designed to limit class claims to those fairly encompassed by the named plaintiffs'

individual claims.'" *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th

Cir. 2003) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)).

If the action satisfies Rule 23(a), the Court determines whether the action meets

at least one of the three requirements of Rule 23(b). Rule 23(b) allows a class action to

be maintained if:

> (1) prosecuting separate actions by or against individual class members
> would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual
>> class members that would establish incompatible standards of
>> conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as
>> a practical matter, would be dispositive of the interests of the other
>> members not parties to the individual adjudications or would
>> substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds
> that apply generally to the class, so that final injunctive relief or
> corresponding declaratory relief is appropriate respecting the class as a
> whole; or
>
> (3) the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods
> for fairly and efficiently adjudicating the controversy. …

Fed. R. Civ. P. 23(b).

-8-

The Plaintiffs contend they satisfy the four prerequisites of Rule 23(a), and their action is appropriate for class certification under any of the class action types set forth by Rule 23(b).  The Defendants oppose class certification.  The burden of establishing the propriety of class certification lies with the moving party.  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (citing *Valley Drug Co.*, 350 F.3d at 1187).

### 1. Numerosity

To satisfy the numerosity requirement, the class must be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  "'[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'"  *Dragon v. Quicken Loans, Inc.*, 269 F.R.D. 695, 700 (S.D. Ga. 2010) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  The Defendants have submitted a spreadsheet showing 893 Georgia residents participated in the CCR program.  (Doc. 66-8).  The Defendants do not contest that the Plaintiffs have satisfied the numerosity requirement.  Accordingly, the Court finds a class of 893 putative members renders joinder of all members impracticable, and the numerosity requirement is met.

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."  To satisfy this requirement, the Plaintiffs must show the putative class members "have suffered the same injury[.]"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)) (internal quotation marks omitted).  However, class certification is not appropriate merely because the plaintiffs allege all members of the class suffered a violation of the same

provision of law.  *Id.*  Rather, "[t]heir claims must depend upon a common contention …

of such a nature that it is capable of classwide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity of

each one of the claims in one stroke."  *Id.*  Commonality "'does not require that all the

questions of law and fact raised by the dispute be common,' … or that the common

questions of law or fact 'predominate' over individual issues."  *Vega*, 564 F.3d at 1268

(internal citation omitted).

The Defendants contend the Plaintiffs fail to satisfy the commonality prerequisite

for several reasons.  First, the Defendants argue that a determination of whether the

"practice of law" exemption applies will turn on the interactions between each individual

putative class member and the attorneys responsible for negotiating his debt.  The

Defendants also contend no commonality exists between the Plaintiffs, who were

assigned Roell-Taylor as their LPPA during the time Dakich served as national

mediation counsel, and those putative members who were assigned Pearson as their

LPPA or who enrolled after Whitehead assumed the role of national mediation counsel.

Essentially, the Defendants assert the "practice of law" exemption may apply to their

debt adjusting services on a case-by-case basis.  The Defendants have cited no

authority indicating the exemption is intended to operate in this manner.

Moreover, the Plaintiffs are not merely asserting that some of the LPPAs

associated with the CCR program dropped the ball by not sufficiently creating an

attorney-client relationship with their assigned Georgia residents.  The Plaintiffs contend

that whether some of the LPPAs actually contacted their assigned clients or reviewed

those clients' files is beside the point because the LPPAs did not perform any debt

adjusting services.  Instead, the Plaintiffs allege those services occurred outside of Georgia contrary to the requirement of the "practice of law" exemption, which requires debt adjusting services be incurred in the practice of law in this state.  Regardless of where the services actually occurred, the Plaintiffs also contend those services were not incurred in the practice of law.

The Plaintiffs have set forth numerous common facts to refute the Defendants' argument.  For instance, Preferred, not the Georgia LPPAs, hired Dakich to mediate the customers' debts.  Dakich told LPPAs they were only responsible for reviewing a debtor's file for eligibility into the CCR program, and they were not required to mediate any debt or communicate with any of the debtor's creditors.  The Plaintiffs contend the Georgia LPPAs were not necessary to enroll a Georgia debtor into the CCR program, however, because Dakich assumed the debtor was accepted into the program as long as his office did not hear from the LPPA.  Further, Dakich never conducted any inquiry into whether the LPPA actually reviewed the file.  The Plaintiffs also assert no evidence exists to show clients were formally transferred to Whitehead upon his replacement of Dakich, which shows the lawyers involved were only "disposable interchangeable parts" in the Defendants' scheme.  (Doc. 103 at 7).

Contrary to the Defendants' contentions, commonality is not defeated simply because the putative class members may have interacted with different individuals or had different experiences with the CCR program.  The Plaintiffs have alleged the Defendants enrolled each putative class member in the same program and charged each member a nearly identical fee structure.  Thus, after determining whether the CCR program qualifies for the practice of law exemption under the Debt Adjustment Act, the

common question of fact becomes whether the fees charged and collected violated the Act.  *See Carlsen v. Freedom Debt Relief, LLC*, 2010 WL 1286616, at *7 (E.D. Wash. 2010).

Second, the Defendants argue the Plaintiffs cannot show commonality because reliance is a necessary element of their fraud and negligent misrepresentation claims, and "the reliance element of a class claim presents problems of individualized proof that precludes class certification."  (Doc. 100 at 21) (quoting *Heffner v. Blue Cross and Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006)).  While problems of individualized proof of reliance tend to make these claims inappropriate for resolution in a class action, a class action may sometimes be used to resolve claims of "'fraud perpetrated on numerous persons by the use of similar misrepresentations.'"  *Miles v. Am. Online, Inc.*, 202 F.R.D. 297, 304 (quoting Fed. R. Civ. P. 23 advisory committee's note).  In any event, the Court need not address whether the alleged misrepresentations at issue were similar enough to eliminate the problems of individualized proof of reliance because the Court finds the Plaintiffs' claims for fraud, breach of fiduciary duty, and negligent misrepresentation are inappropriate for class certification for the reasons discussed below.[4]

Third, the Defendants contend the Plaintiffs have failed to establish potential class members have suffered the same injury because potential damages will vary among the class members due to five factors.  The presence of an individualized damages issue, however, is insufficient to defeat commonality.  *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1178-79

---

[4] *See infra* section II.B.4.

(11th Cir. 2010).  The fact that class members will be required to prove damages

individually through individualized documentation does not preclude class certification,

and in any event, "[t]he amount of damages is invariably an individual question."  *Brown*

*v. Consumer Law Assocs., LLC*, 283 F.R.D. 602, 612 (E.D. Wash. 2012) (quoting

*Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

### 3.  Typicality

The typicality requirement is satisfied if "the claims or defenses of the

representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P.

23(a)(3).  "'A class representative must possess the same interest and suffer the same

injury as the class members in order to be typical under Rule 23(a)(3).  [T]ypicality

measures whether a sufficient nexus exists between the claims of the named

representatives and those of the class at large.'"  *Vega*, 564 F.3d at 1275 (alteration in

original) (quoting *Busby*, 513 F.3d at 1322).  Although the commonality and typicality

prerequisites may be related, "commonality refers to the group characteristics of the

class as a whole, while typicality refers to the individual characteristics of the named

plaintiff in relation to the class."  *Id.* (internal quotation marks and citations omitted).

The Defendants argue that neither of the Plaintiffs is typical of the proposed class

members.  The Defendants assert Gregory is not typical because her enrollment

agreement includes a binding arbitration clause which is present in some of the

Defendants' other Georgia customers' agreements as well.  The Defendants assert

Wells is not typical because his failure to disclose his claims against the Defendants in

his personal bankruptcy action renders his ability to proceed in this case vulnerable to

judicial estoppel.  Further, the Defendants contend neither Wells nor Gregory can

establish his or her claims are typical of other debtors who were assigned to Pearson or who enrolled while Whitehead was serving as national mediation counsel.

Regarding the arbitration clause in Gregory's enrollment agreement, the Defendants do not seriously contend they have not waived their right to invoke arbitration against Gregory.  The Eleventh Circuit uses a two-part test to determine whether a party has waived its right to compel arbitration.  First, the court looks at whether the party has acted inconsistently with its right to compel arbitration under the totality of the circumstances.  *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012) (citation omitted).  "A party acts inconsistently with the arbitration right when the party 'substantially invokes the litigation machinery prior to demanding arbitration.'"  *Id.* (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).  Second, the court considers whether the party who has acted inconsistently with its right to compel arbitration has prejudiced the other party.  *Id.* (citing *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 (11th Cir. 2002)).  "To determine whether the other party has been prejudiced, '[the court] may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process.'"  *Id.* (quoting *S & H Contractors, Inc.*, 906 F.2d at 1514).  Gregory filed this action over two years ago, and the Defendants have never made an attempt to enforce the arbitration clause.  The Defendants have acted inconsistently with their right to compel arbitration, and to compel arbitration at this stage would prejudice Gregory.  Thus, the Court finds the Defendants have waived their right to enforce the arbitration clause against Gregory.

Regarding the Defendants' ability to compel arbitration against putative class members, the Plaintiffs argue that the Defendants' waiver of their right to enforce Gregory's clause also waives their right to compel arbitration against other class members because Gregory stands in the shoes of each putative class member.  The Court disagrees; the waiver of a party's right to enforce an arbitration clause against a class representative does not affect the right to enforce a valid arbitration clause against a putative class member.  *See Khadera v. ABM Industr. Inc.*, 2011 WL 7064235, at *4 (W.D. Wash. 2011) (finding the defendants waived their right to compel arbitration against the class representatives for failure to timely assert that right, but the defendants could not be faulted for not moving to compel arbitration against the opt-in plaintiffs prior to their joining the litigation); *see also Mora v. Harley-Davidson Credit Corp.*, 2012 WL 1189769, at *15 (E.D. Cal.) (holding the defendant did not have the right to compel arbitration against unnamed class members prior to class certification because the court had jurisdiction over a class representative but not putative plaintiffs).

Nevertheless, the fact that some putative class members may be subject to this special defense does not preclude class certification.  *Bond v. Fleet Bank (RI), N.A.*, 2002 WL 31500393, at *7 (D.R.I.) (noting valid arbitration agreements with some putative class members may require the creation of subclasses or the elimination of certain members from the class, but they did not prevent the court from certifying the class); *see also Mora*, 2012 WL 1189769, at *13 (summarizing cases where courts have "held the presence of agreements to arbitrate with some of the unnamed [c]lass members does not defeat class certification").  Further, the Defendants have not presented any evidence of how many putative class members they claim are subject to

binding arbitration clauses or that any Georgia customer other than Gregory even entered into an enrollment agreement with an arbitration clause.[5]  It is not the Plaintiffs' burden to make this showing or demonstrate the Defendants have not waived any right to compel arbitration against putative class members.  *Mora*, 2012 WL 1189769, at *14.

Turning to the Defendants' contention that Wells is not typical of putative class members because he is subject to an individualized defense for his failure to disclose his involvement in this case in his bankruptcy action, the Court finds this argument specious.  Wells filed his petition for bankruptcy before this case was filed, and he listed possible claims against the Defendants based on his participation in the CCR program in a schedule attached to his petition.  Schedule B at 8, *In re Eddie James Wells Sr.*, No. 11-60006 (Bankr. S.D. Ga. January 3, 2011).  Further, the Trustee's motion to confirm the bankruptcy plan requires Wells to contribute all of the non-exempt proceeds he may receive from this suit to his unsecured creditors.  Trustee's Motion to Confirm Plan, as Amended, *In re Eddie James Wells Sr.*, No. 11-60006 (Bankr. S.D. Ga. April 25, 2011).  The Defendants have not shown Wells failed to adequately inform the bankruptcy court of his claims, and therefore, Wells is not subject to a special defense of judicial estoppel.

Finally, the fact that other putative class members may have been assigned a different LPPA or enrolled after a change in the national mediation counsel does not render the Plaintiffs' claims not typical of the claims of other potential class members. The Plaintiffs allege there was little to no difference in the actions taken by the LPPAs

---

[5] The Court will revisit the issue of creating subclasses or eliminating some members of the class in the event that any of the putative class members are subject to binding arbitration agreements and the Defendants compel arbitration against those members.

and national mediation counsel, and the Defendants have not provided any evidence to

show that any of the putative class members' claims would be affected on this basis.

The claims of the putative class members are premised on the same injuries arising

from the same course of conduct as the Plaintiffs – i.e., they paid excessive fees for

debt adjusting services that violated the Debt Adjustment Act.  Accordingly, the typicality

requirement is satisfied.

### 4.  Adequacy

Under the final Rule 23(a) prerequisite, the class representatives must show they

"will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

This requirement applies to both class representatives and their counsel.[6]  *London v.*

*Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003) (citing *Amchem Prods., Inc.*

*v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).  The adequacy prerequisite "'encompasses

two separate inquiries: (1) whether any substantial conflicts of interest exist between the

representatives and the class; and (2) whether the representatives will adequately

prosecute the action.'"  *Busby*, 513 F.3d at 1323 (quoting *Valley Drug*, 350 F.3d at

1189).

The Defendants argue that the Plaintiffs cannot satisfy the adequacy requirement

for at least three reasons: (1) the Plaintiffs assert they will waive the right of potential

class members to recover damages on the fraud, breach of fiduciary duty, and negligent

misrepresentation claims; (2) they are not sufficiently involved with prosecuting the

---

[6] The Defendants have not raised any arguments in their objection to class certification that the Plaintiffs' counsel cannot adequately and effectively serve as class counsel.  The Court does not find any reason at this time not to appoint the Plaintiffs' counsel as class counsel, although the Defendants may raise any objections they have as discussed below.  *See infra* section III.

lawsuit; and (3) Wells is a convicted felon and lacks the necessary personal characteristics and integrity to fulfill his fiduciary role of class representative.[7]

First, the Court agrees the Plaintiffs' decision to waive compensatory damages under their fraud, breach of fiduciary duty, and negligent misrepresentation claims creates a conflict of interest with putative class members. Denial of class certification should not be considered unless a named plaintiff fails to establish he "can adequately represent the interests of a sufficient number of similarly situated and similarly minded individuals." *Fields v. Oakwood Mobile Homes, Inc.*, 71 F. Supp. 2d 1205, 1208 (S.D. Ala. 1999). The Plaintiffs' sole justification for this waiver is that their counsel made a strategic legal decision to further the interests of all class members.[8] It is likely the Plaintiffs' counsel made this decision because of the potential problems those claims present when adjudicated on a classwide basis, but counsel nevertheless retained those claims as a vehicle to collect attorney's fees. The Plaintiffs have not offered any explanation to show a sufficient number of unnamed plaintiffs, who similarly wish to forego compensatory damages on these claims, exists. An attempt to waive the recovery of damages without waiver authority granted by the unnamed class members creates a conflict of interest between the representatives and the remaining members of the class. *See, e.g.*, *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 724

---

[7] The Defendants also argue the Plaintiffs are vulnerable to specific defenses not applicable to members of the putative class. As discussed in the preceding section, the Plaintiffs are not subject to the special defenses alleged by the Defendants.

[8] The Plaintiffs' lawyers implicitly acknowledge they made this decision because class certification issues would arise due to problems with individualized proof of reliance. However, they do not explain how that decision furthers the interests of other class members. It seems to the Court the class members would have to prove the underlying claims in any event to recover attorney's fees.

(5th Cir. 2002) ("[I]t is improbable that [the plaintiff] can ethically unilaterally waive the rights of the putative class members to attorney's fees without their authorization."); *Ditcharo v. United Parcel Serv.*, 2009 WL 211146, at *5 (E.D. La.) (holding named plaintiffs could not limit putative class members' individual recovery to $75,000, absent a grant of authority from the unnamed members, to avoid federal diversity jurisdiction). Accordingly, the Court finds the Plaintiffs' claims for fraud, breach of fiduciary duty, and negligent misrepresentation are not appropriate for class certification.

Second, the Court finds Gregory has demonstrated the ability to serve as a representative in this action, but Wells has not.  Gregory initiated this action and sought out her attorney.  *Cf. Villafane v. Money Mgmt., Int'l, Inc.*, No. 1:07-cv-507, at 6, 8 (N.D. Ga. August 11, 2008) (noting that neither class representative knew of the action until after it was filed).  Gregory's deposition reveals she is familiar with the substance of her claims and the applicable law.  (Doc. 36 at 18:6-10, 19:8-17, 34:9-19).  She is familiar with the allegations in the complaint and reviewed the documents sent to the Defendants during class certification discovery.  (Doc. 36 at 28:13-19, 35:13-16). Gregory has been in contact with her attorney on a regular basis since this action was filed and has provided him with documentation to support her claims.  (Doc. 36 at 24:18-25:4).  The fact that Gregory may not have a complete understanding of how class counsel will be paid is insufficient to demonstrate she cannot discharge her duties as a class representative.

Wells, on the other hand, appears to lack an understanding of the basis for the claims in this case.  Wells stated the only allegation of the Defendants' wrongdoing he is aware of is "they told [him] they were going to do something for [him] and they did not."

(Doc. 37 at 154:3-6).  Wells also stated he was not aware of the Debt Adjustment Act and had never read it.  (Doc. 37 at 146:11-19).  Although Wells is aware of the potential damages he could recover in this action, he does not appear to have a grasp on the general nature of this lawsuit or the allegations forming the basis of his claims.  Accordingly, this lack of familiarity with the allegations renders Wells inadequate to serve as a class representative in this case.  *See Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 502 (N.D. Ga. 2006) (finding statements made in the named plaintiff's deposition that were contrary to allegations made in the complaint rendered him inadequate to serve as class representative).

### 5. Predominance and Superiority

If the class action satisfies the requirements of Rule 23(a), then the Court turns to the requirements of Rule 23(b).  Rule 23(b) sets out the three types of class actions, and the action need only satisfy the requirements of one type to be certified as a class action.  Because the Court finds this action satisfies the requirements of Rule 23(b)(3) the Court does not need to consider whether it could also appropriately be certified under Rules 23(b)(1) or 23(b)(2).[9]

To have their suit certified as a class action under Rule 23(b), the Plaintiffs must show they meet the requirements of predominance and superiority, meaning:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

---

[9] The Supreme Court has stated that "individualized monetary claims belong in Rule 23(b)(3)[,]" as is the case before this Court.  *Dukes*, 131 S. Ct. at 2558.

"Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'"  *Babineaus v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (alteration in original) (citation omitted).  "On the other hand, common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'"  *Id.* (citation omitted).  Certification is not appropriate if each class member must submit a substantial amount of individualized proof to establish most or all elements of their claims.  *Id.* (citation omitted).  The Court must consider the claims, defenses, relevant facts, and substantive law to determine whether resolution of the classwide issues will further each class member's claims.  *Id.* (citation omitted).

The Defendants contend individual, rather than common, issues predominate for several reasons.[10]  First, they assert the determination of whether the CCR program meets the requirements of the "practice of law" exemption turns on an individualized analysis of each putative class member's interactions with his assigned attorneys.  Second, the Defendants argue class members' damages would be individualized and not amenable to general proof.  Although these arguments have been previously addressed in the commonality inquiry, the Court considers these issues separately here

---

[10] The Defendants also argue individualized issues predominate in the Plaintiffs' fraud, breach of fiduciary duty, and negligent misrepresentation claims because the Court would have to determine what misrepresentations were made to each putative class member and whether each putative class member relied on the misrepresentations.  However, the Court has already found the Plaintiffs' fraud, breach of fiduciary duty, and negligent misrepresentation claims to be inappropriate for class certification for the reasons discussed above.  *See supra* section II.B.4.

because "the predominance criterion is far more demanding" and not satisfied simply because the commonality prerequisite has been met.  *Amchem Prods., Inc.*, 521 U.S. at 623-624 (citation omitted).

As the Court noted above, the Defendants have offered no authority to show the "practice of law" exemption may be applied to businesses or individuals engaged in debt adjusting services on a case-by-case business dependent upon each customer's interactions with the individual employees.  The Plaintiffs' contentions are that, regardless of who a customer interacted with, the LPPAs had little to no involvement with Georgia customers and that the LPPAs did not perform any debt adjusting services.  The Defendants do not contend any of the actions taken by the LPPAs qualify as debt adjusting services.  Thus, the appropriate question is not whether the interactions of each Georgia customer with the Defendants or their employees permit the Defendants to take advantage of the exemption on a per-customer basis.  Rather, the common question of law is whether the statutory exemption should be interpreted to allow the Defendants the benefit of the exemption when the Defendants' debt adjusting services occurred outside of this state and the local attorneys performed functions that were ancillary at best to the debt adjusting services.  The answer to this question does not break down into individualized factual or legal issues and "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 131 S. Ct. at 2551.

If the exemption does not apply to the Defendants' debt adjusting services, then the common question of fact is whether the fees charged to each putative class member were in excess of the cap set by the Debt Adjustment Act.  The fees charged to each

member vary according to five factors: (1) the enrollment fee, which was calculated as a percentage of the total amount of debt enrolled into the CCR program; (2) the monthly maintenance fee, which was $39.95 or $49.95 depending upon the date of enrollment; (3) the number of months each member was enrolled in the CCR program; (4) the settlement fee, which was calculated as a percentage of the debt settled; and (5) whether a refund was paid to the member.  For each class member to recover, individualized proof of damages will be necessary.  However, "[i]ndividualized damages issues are … least likely to defeat predominance 'where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods.'" *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1179 (citation omitted).  There is nothing difficult about calculating damages here.  A putative class member who received debt adjustment services that violated the Act would be entitled to $5,000 in statutory damages plus the return of fees paid.  A brief examination of each class member's billing history would establish both the Defendants' liability and the amount of damages to be awarded to that member.  *See Brown*, 283 F.R.D. at 615.  Accordingly, the Court finds the questions common to all class members predominate over individualized questions.

The following factors are useful for determining whether a class action is a superior method for adjudicating the case:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "The focus of this analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'"  *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1183-84 (citation omitted). The predominance analysis has a significant impact on the superiority analysis; if common issues predominate over individual issues, then a class action is likely to be a superior vehicle for adjudicating the plaintiffs' claims.  *Id.* at 1184 (citations omitted).

The Defendants argue that a class action is not the superior method to adjudicate the putative class members' claims because the Eleventh Circuit has cautioned that class certification is inappropriate for a technical violation of a strict liability statute where the potential statutory damages would be grossly disproportionate to the actual harm suffered by the class members.  *See London*, 340 F.3d at 1255 n.5 (doubting whether the proposed class action could satisfy Rule 23(b)(3)'s superiority requirement where the claims involved the defendants' "failure to follow the requirements of a complex regulatory scheme, subject to different reasonable interpretations[,]" and the plaintiffs suffered no economic harm).  However, this concern is not before the Court.  While the Debt Adjustment Act is a strict liability statute, the Plaintiffs are not asking for damages for mere technical violations.  The Plaintiffs allege the Defendants engaged in an intentional, fraudulent scheme to circumvent the requirements of the Act by associating local attorneys who perform little to no services for Georgia debtors.  Although the Eleventh Circuit has indicated courts should "assess whether the potential damages available in a class action are grossly disproportionate to the conduct at issue," the court has also stated, "Where the defendant's alleged behavior is deliberate or intentional, we have had no problem allowing class actions to

proceed." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (citations omitted). The Defendants' alleged behavior is deliberate and intentional, and thus, the fact that they may be subject to a large amount of statutory damages relative to the harm suffered by the putative class members has no bearing on whether class certification is appropriate.

A consideration of the factors identified above weighs strongly in favor of adjudication as a class action. First, it does not appear that each class member has a significant interest in litigating his claims separately. Given the relatively small value of each putative class member's damages, the costs of pursuing such claims individually would likely exceed the value of his recovery. *See Sacred Heart*, 601 F.3d at 1184 (quoting *Amchem Prods., Inc.*, 521 U.S. at 617) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Second, the Court is unaware of any other pending litigation concerning the same subject matter between the Defendants and the potential class members. Third, concentrating this litigation in the Middle District of Georgia is appropriate because the proposed class is limited to Georgia residents. Thus, there is no reason to deny class certification on the ground that another forum would be more convenient. Finally, the Court finds no significant procedural barriers to managing this case as a class action.

Accordingly, the Court finds the final requirement of superiority is satisfied, and this class is appropriate for certification pursuant to Rule 23(b)(3).

### III.  CONCLUSION

For the foregoing reasons, the Plaintiffs' amended motion for class certification is **GRANTED** as to the Plaintiffs' claim under the Debt Adjustment Act and **DENIED** as to the Plaintiffs' claims for fraud, breach of fiduciary duty, and negligent misrepresentation.[11]

The Court certifies the following class pursuant to Rule 23(b)(3):

All persons who, while residing in the State of Georgia, received Debt Settlement and/or Debt Adjusting services from the Defendants on or after July 1, 2003, and from whom the Defendants accepted, either directly or indirectly, any charge, fee, contribution, or combination thereof.

Pursuant to Rule 23(g), Christopher A. Cosper of Hull Barrett, PC; F. Jerome Tapley, George Richard Digiorgio, and Jon C. Conlin of Cory Watson Crowder & DeGaris; James W. Hurt, Jr. of Hurt, Stolz & Cromwell LLC; and John Christopher Clark of Clark & Smith Law Firm, LLC are appointed as class counsel.  Any party objecting to the interim counsels' appointment as class counsel shall have **seven days** from the date of entry of this Order certifying the class to file written objections with the Court.

The Court designates named Plaintiff Tina M. Gregory as class representative.

Within **seven days** from the date of this Order, the Parties shall file a joint proposal for providing notice to class members.  The notice shall comply with the requirements of Rule 23(c)(2)(B).  In the event the Parties are unable to reach a consensus for providing class members or potential class members with notice, the

---

[11] The Plaintiffs' original motion to certify class (Doc. 66) is **DENIED as moot**.

Parties shall submit a single document outlining the areas in which they agree and those in which they do not agree.

**SO ORDERED,** this 17th day of December, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT